United States District Court
Northern District of California

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

KESHAWN FULTON MITCHELL,

Plaintiff,

v.

COUNTY OF CONTRA COSTA, et al.,

Defendants.

Case No.  21-cv-05014-DMR

**ORDER ON MOTION TO DISMISS**

Re: Dkt. No. 15

Plaintiff Keshawn Fulton Mitchell filed a complaint against Defendants County of Contra Costa ("Contra Costa") and law enforcement officers Thomas Brook and Kyle Emley alleging claims arising out of his February 2020 arrest.  Defendants now move pursuant to Federal Rule of Civil Procedure 12(b)(6) to dismiss Mitchell's claims for supervisory liability and municipal liability under *Monell v. Department of Social Services of City of New York*, 436 U.S. 658 (1978). [Docket No. 15.]  This matter is suitable for disposition without oral argument.  Civ. L.R. 7-1(b). For the following reasons, Defendants' motion is granted.

I. **BACKGROUND**

The complaint contains the following allegations, all of which are taken as true for purposes of this motion.[1]  Brook and Emley are officers with the Contra Costa County Sheriff's Office ("CCCSO").  Compl. ¶ 5.  On February 27, 2020, Mitchell surrendered to Brook and Emley after they ordered him to do so.  He alleges that while he was "face-down on the ground with arms out and away from his body in full surrender fashion," the officers subjected him to excessive force, including baton strikes and "stomping" to the back of his head.  *Id*. at ¶ 12.  Mitchell further

---

[1] When reviewing a motion to dismiss for failure to state a claim, the court must "accept as true all of the factual allegations contained in the complaint."  *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam) (citation omitted).

United States District Court
Northern District of California

1    alleges that he was arrested and charged with violating California Penal Code section 148(a)(1)[2]

2    based on "deliberately fabricated facts." *Id*. at ¶ 13.  According to Mitchell, the officers fabricated

3    claims that Mitchell ignored their commands "to stop running and get on the ground" after they

4    identified themselves, resulting in a foot chase that ended when Mitchell tried and failed to jump

5    over a fence. *Id*. at ¶ 12.  Mitchell denies that he ignored the officers' commands, engaged in a

6    foot chase, or attempted to jump over the fence. *Id*.  He also alleges that he "did not, at any time,

7    physically resist, threaten, batter, or assault any Defendant," fail to obey any order, or "delay,

8    obstruct, or interfere" with the officers' duties. *Id*. at ¶ 14.  Mitchell's prosecution "was subject to

9    a Misdemeanor Pre-Trial Diversion Order . . . without a plea." *Id*. at ¶ 13.

10         Mitchell alleges the following claims for relief: 1) a 42 U.S.C. § 1983 claim for violations

11   of the Fourth Amendment based on excessive force, unlawful arrest, and fabrication of material

12   facts against Brook and Emley and Doe Defendants 1 to 100; 2) a 42 U.S.C. § 1983 claim against

13   Contra Costa and Doe Defendants 101 to 200 for a) municipal liability under *Monell* and 2)

14   supervisory liability.

15         Defendants now move to dismiss the *Monell* claim and the supervisory liability claims.

16   **II.    LEGAL STANDARD**

17         A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of the claims alleged in

18   the complaint.  *See Parks Sch. of Bus., Inc. v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995).

19   When reviewing a motion to dismiss for failure to state a claim, the court must "accept as true all

20   of the factual allegations contained in the complaint," *Erickson*, 551 U.S. at 94 (citation omitted),

21   and may dismiss a claim "only where there is no cognizable legal theory" or there is an absence of

22   ─────────────────

23   [2] The relevant provision of California Penal Code section 148 states:

24            Every person who willfully resists, delays, or obstructs any public
              officer, peace officer, or an emergency medical technician . . .  in the

25            discharge or attempt to discharge any duty of his or her office or
              employment, when no other punishment is prescribed, shall be

26            punished by a fine not exceeding one thousand dollars ($1,000), or by
              imprisonment in a county jail not to exceed one year, or by both that

27            fine and imprisonment.

28   Cal. Penal Code § 148(a)(1).

1    "sufficient factual matter to state a facially plausible claim to relief." *Shroyer v. New Cingular*

2    *Wireless Servs., Inc.*, 622 F.3d 1035, 1041 (9th Cir. 2010) (citing *Ashcroft v. Iqbal*, 556 U.S. 662,

3    677-78 (2009); *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001)) (quotation marks omitted).

4    A claim has facial plausibility when a plaintiff "pleads factual content that allows the court to

5    draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556

6    U.S. at 678 (citation omitted).  In other words, the facts alleged must demonstrate "more than

7    labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."

8    *Bell Atl. Corp. v. Twombly*, 550 U.S. 554, 555 (2007) (citing *Papasan v. Allain*, 478 U.S. 265, 286

9    (1986)); *see Lee v. City of L.A.*, 250 F.3d 668, 679 (9th Cir. 2001), overruled on other grounds by

10   *Galbraith v. Cty. of Santa Clara*, 307 F.3d 1119 (9th Cir. 2002).

11          As a general rule, a court may not consider "any material beyond the pleadings" when

12   ruling on a Rule 12(b)(6) motion.  *Lee*, 250 F.3d at 688 (citation and quotation marks omitted).

13   However, "a court may take judicial notice of 'matters of public record,'" *id.* at 689 (citing *Mack*

14   *v. S. Bay Beer Distrib.*, 798 F.2d 1279, 1282 (9th Cir. 1986)), and may also consider "documents

15   whose contents are alleged in a complaint and whose authenticity no party questions, but which

16   are not physically attached to the pleading," without converting a motion to dismiss under Rule

17   12(b)(6) into a motion for summary judgment.  *Branch v. Tunnell*, 14 F.3d 449, 454 (9th Cir.

18   1994), *overruled on other grounds by Galbraith*, 307 F.3d at 1125-26.  The court need not accept

19   as true allegations that contradict facts which may be judicially noticed.  *See Mullis v. U.S. Bankr.*

20   *Court*, 828 F.2d 1385, 1388 (9th Cir. 1987).

21   **III.     DISCUSSION**

22          **A.     *Monell* Claim**

23                **1.     Legal Standards for *Monell* Liability**

24          A municipality may face section 1983 liability if it "'subjects' a person to a deprivation of

25   rights or 'causes' a person 'to be subjected' to such deprivation." *Connick v. Thompson*, 563 U.S.

26   51, 60 (2011) (quoting *Monell*, 436 U.S. at 692).  However, the municipality may be held liable

27   "only for '[its] *own* illegal acts.'"  *Id.* (quoting *Pembaur v. Cincinnati*, 475 U.S. 469, 479 (1986)).

28   It cannot be held vicariously liable for its employees' actions.  *Id.* (citations omitted).  To establish

United States District Court
Northern District of California

3

United States District Court
Northern District of California

1    municipal liability, plaintiffs "must prove that 'action pursuant to official municipal policy' caused

2    their injury." *Id.* (quoting *Monell*, 436 U.S. at 691). "The 'official policy' requirement was

3    intended to distinguish acts of the *municipality* from acts of *employees* of the municipality, and

4    thereby make clear that municipal liability is limited to action for which the municipality is

5    actually responsible." *Pembaur*, 475 U.S. at 479-80 (emphasis in original). Official municipal

6    policy includes "the decisions of a government's lawmakers, the acts of its policymaking officials,

7    and practices so persistent and widespread as to practically have the force of law." *Connick*, 563

8    U.S. at 61 (citations omitted). Such policy or practice must be a "moving force behind a violation

9    of constitutional rights." *Dougherty v. City of Covina*, 654 F.3d 892, 900 (9th Cir. 2011) (citing

10   *Monell*, 436 U.S. at 694). An official municipal policy may be either formal or informal. *City of

11   Saint Louis v. Praprotnik*, 485 U.S. 112, 131 (1988) (acknowledging that a plaintiff could show

12   that "a municipality's actual policies were different from the ones that had been announced.").

13       In the Ninth Circuit, a municipality may be liable under section 1983 under three possible

14   theories. *Rodriguez v. Cnty. of Los Angeles*, 891 F.3d 776, 802 (9th Cir. 2018). The first is where

15   "execution of a government's policy or custom, whether made by its lawmakers or by those whose

16   edicts or acts may fairly be said to represent official policy, inflict[ed] the injury." *Id.* (quoting

17   *Monell*, 436 U.S. at 694). "A policy or custom may be found either in an affirmative proclamation

18   of policy or in the failure of an official 'to take any remedial steps after [constitutional]

19   violations.'" *Gomez v. Vernon*, 255 F.3d 1118, 1127 (9th Cir. 2001) (quoting *Larez v. City of Los

20   Angeles*, 946 F.2d 630, 647 (9th Cir. 1991) (holding that a jury could find a policy or custom of

21   using excessive force from the police chief's failure to discipline officers for such conduct)); *see

22   also Hunter v. Cnty. of Sacramento*, 652 F.3d 1225, 1234-35 (9th Cir. 2011) (holding that

23   "evidence of a recurring failure to investigate and discipline municipal officers for constitutional

24   violations can help establish the existence of an unconstitutional practice or custom" of using

25   excessive force).

26       Second, "a local government can fail to train employees in a manner that amounts to

27   'deliberate indifference' to a constitutional right, such that 'the need for more or different training

28   is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that

4

the policymakers of the city can reasonably be said to have been deliberately indifferent to the need.'" *Rodriguez*, 891 F.3d at 802 (quoting *City of Canton v. Harris*, 489 U.S. 378, 390 (1989)).

Finally, a municipality may be liable under section 1983 if "the individual who committed the constitutional tort was an official with final policy-making authority or such an official ratified a subordinate's unconstitutional decision or action and the basis for it." *Rodriguez*, 891 F.3d at 802-03 (quoting *Gravelet-Blondin v. Shelton*, 728 F.3d 1086, 1097 (9th Cir. 2013) (internal quotation marks and citation omitted)).

### 2. Analysis

Mitchell alleges municipal liability based on three theories: policy, custom, or practice; failure to train; and ratification. *See* Compl. ¶¶ 24-28. Defendants move to dismiss the claim under all three theories.

#### a. Policy, Custom, or Practice

In order to prove a claim for municipal liability based on a policy, custom, or practice, a plaintiff must "demonstrate that an 'official policy, custom, or pattern' on the part of [the defendant] was 'the actionable cause of the claimed injury.'" *Tsao v. Desert Palace, Inc.*, 698 F.3d 1128, 1143 (9th Cir. 2012) (quoting *Harper v. City of Los Angeles*, 533 F.3d 1010, 1022, 1026 (9th Cir. 2008)). "[A] plaintiff may be able to prove the existence of a widespread practice that, although not authorized by written law or express municipal policy, is 'so permanent and well settled as to constitute a custom or usage with the force of law.'" *City of St. Louis*, 485 U.S. at 127 (quoting *Adickes v. S.H. Kress & Co*., 398 U.S. 144, 167-68 (1970)).

Municipalities can be held liable under *Monell* for policies of inaction or omission as well as policies of action or commission. *Jackson v. Barnes*, 749 F.3d 755, 763 (9th Cir. 2014) (citing *Gibson v. Cnty. of Washoe*, 290 F.3d 1175, 1185-86 (9th Cir. 2002), *overruled on other grounds in Castro v. Cnty. of Los Angeles*, 833 F.3d 1060, 1076 (9th Cir. 2016)). "A policy of action is one in which the government body itself violates someone's constitutional rights, or instructs its employees to do so; a policy of inaction is based on a government body's 'failure to implement procedural safeguards to prevent constitutional violations.'" *Jackson*, 749 F.3d at 763 (quoting *Tsao*, 698 F.3d at 1143). In cases alleging a policy of inaction, a municipality may be responsible

through its omissions for "a constitutional violation committed by one of its employees, even though the municipality's policies were facially constitutional, the municipality did not direct the employee to take the unconstitutional action, and the municipality did not have the state of mind required to prove the underlying violation." *Gibson*, 290 F.3d at 1185-86.  In such cases, the plaintiff must establish that the policy "amounts to deliberate indifference to the plaintiff's constitutional right," which requires showing that the government body "was on actual or constructive notice that its omission would likely result in a constitutional violation." *Tsao*, 698 F.3d at 1143, 1145 (citations and quotation marks omitted).

A plaintiff can "establish the existence of an unconstitutional practice or custom," such as "an informal but widespread custom of using excessive force," through "evidence of a recurring failure to investigate and discipline officers for" such violations. *Hunter*, 652 F.3d at 1234-35.  In such cases, "evidence of inaction" by the municipality "can support an inference that an unconstitutional custom or practice has been unofficially adopted by a municipality," despite an official policy prohibiting the unconstitutional act. *Id.* at 1234 n.8.  In other words, evidence of inaction—e.g., failure to discipline—can support the existence of an unconstitutional policy of action—e.g., excessive use of force.

Here, Mitchell alleges that Brook and Emley acted pursuant to the following alleged customs, policies, practices, and/or procedures of CCCSO:

> a. Failure to supervise and/or discipline deputies for misconduct that results in the violation of citizens' civil rights; and/or,
>
> . . .
>
> c. Using or tolerating excessive and/or unjustified force; and/or
>
> d. Using or tolerating excessive force on individuals that engage deputies in vehicle pursuits, as a way of retaliating and "punishing" such individuals by inflicting "street justice" and later claiming such individuals were "resisting";
>
> e. Using or tolerating inadequate, deficient, and/or improper procedures for handling, investigating, and reviewing complaints of excessive force or officer misconduct; and/or
>
> f. Covering up violations of constitutional rights by any or all of the following:

i. by failing to properly investigate and/or evaluate complaints or incidents of excessive and unreasonable force, unlawful seizures, and/or handling of mentally ill, drug addicted, and/or or [sic] emotionally disturbed persons; and/or,

ii. by ignoring and/or failing to properly and adequately investigate and discipline unconstitutional or unlawful activity by deputies; and/or,

iii. by allowing, tolerating, and/or encouraging deputies to: fail to file complete and accurate incident reports; file false incident reports; make false statements; intimidate, bias and/or "coach" witnesses to give false information and/or to attempt to bolster deputies' stories; and obstruct and/or interfere with investigations of unconstitutional or unlawful conduct by deputies, by withholding and/or concealing material information;

g. To allow, tolerate, and/or encourage a "code of silence" among deputies and/or law enforcement personnel, whereby an officer or member of COUNTY's sheriff's office does not provide adverse information against a fellow officer and/or law enforcement personnel;

h. To use or tolerate inadequate, deficient, and/or improper procedures for handling, investigating, and reviewing complaints of officer misconduct; and

i. To fail to have and enforce necessary, appropriate, and lawful policies, procedures, and training programs to prevent or correct the unconstitutional conduct, customs, and procedures described in this Complaint and in subparagraphs (a) through (h) above, with deliberate indifference to the rights and safety of Plaintiff and the public, and in the face of an obvious need for such policies, procedures, and training programs.

Compl. ¶ 24.

As an initial matter, these allegations appear to be boilerplate, and several are nearly identical to those Mitchell's counsel has used in other cases against different municipalities. *See, e.g., Arteaga v. City of Oakley*, No. 19-CV-05725-JCS, 2020 WL 511876, at *2 (N.D. Cal. Jan. 31, 2020) (setting forth *Monell* allegations); *Lesher v. City of Anderson*, No. 221CV00386WBSDMC, 2021 WL 2682161, at *4 (E.D. Cal. June 30, 2021) (noting "plaintiff merely relies on boilerplate conclusions of customs, practices, and policies which state, without any supporting factual allegations"). Their boilerplate nature is illustrated by the fact that several of the challenged practices do not bear upon the incident of excessive force and "deliberately fabricated facts" alleged in Mitchell's complaint. For example, the *Monell* allegations include

practices relating to vehicle pursuits, "handling of mentally ill, drug addicted, and/or emotionally disturbed persons," and coaching of witnesses, none of which appear to be at issue in this case.

The policy, custom, and practice allegations are also conclusory. Other than asserting Mitchell's own circumstances, the complaint does not contain specific factual allegations supporting the existence of a policy, custom, or practice, much less how they were the "moving force" behind the alleged constitutional violation. *See Dougherty v. City of Covina*, 654 F.3d 892, 900 (9th Cir. 2011) (a government entity may not be liable under Section 1983 "unless a policy, practice, or custom of the entity can be shown to be a moving force behind a violation of constitutional rights."). The complaint does not allege that any other person was subjected to similar unconstitutional conduct. *Compare Perryman v. City of Pittsburg*, No. 20-CV-03408-SI, 2021 WL 493396, at *3-4 (N.D. Cal. Feb. 10, 2021) (holding that plaintiff represented by Mitchell's counsel plausibly alleged *Monell* claim where he alleged "specific customs or policies that allegedly caused plaintiff's constitutional violation" and provided details about "ten lawsuits that involve incidents where individuals were injured after encounters with defendant's police officers"), *with Zoellner v. City of Arcata*, No. 18-CV-04471-EMC, 2020 WL 6868830, at *2 (N.D. Cal. Nov. 23, 2020) (noting that "[w]ithout alleging other examples outside of his own experience, [plaintiff] cannot plausibly allege that Defendants have a policy or practice of violating criminal suspects' Fourth Amendment rights."). Although the Ninth Circuit has not "established what number of similar incidents would be sufficient to constitute a custom or policy," *Oyenik v. Corizon Health Inc.*, 696 F. App'x 792, 794 (9th Cir. 2017), Mitchell's complaint fails to allege facts to support an inference that that the practices were "widespread" and so "well settled as to constitute a custom or usage." *See City of St. Louis*, 485 U.S. at 127 (quotation omitted); *see Navarro v. Block*, 72 F.3d 712, 714 (9th Cir. 1995) ("Proof of random acts or isolated events is insufficient to establish custom."); *Trevino v. Gates*, 99 F.3d 911, 918 (9th Cir. 1996), *holding modified by Navarro v. Block*, 250 F.3d 729 (9th Cir. 2001) ("Liability for improper custom may not be predicated on isolated or sporadic incidents; it must be founded upon practices of sufficient duration, frequency and consistency that the conduct has become a traditional method of carrying out policy.").

United States District Court
Northern District of California

1    Accordingly, the complaint fails to state a *Monell* claim based on policies, customs, or

2  practices.  The claim is therefore dismissed.  As amendment may fix the deficiencies, dismissal is

3  with leave to amend.

4                      **b.      Failure to Train**

5    Under limited circumstances, "a local government's decision not to train certain employees

6  about their legal duty to avoid violating citizens' rights may rise to the level of an official

7  government policy for purposes of § 1983."  *Connick*, 563 U.S. at 61.  However, "[a]

8  municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a

9  failure to train."  *Id.*  In order to establish liability under this theory, the "municipality's failure to

10  train its employees in a relevant respect must amount to 'deliberate indifference to the rights of

11  persons with whom the [untrained employees] come into contact.'"  *Id.* (citing *Canton v. Harris*,

12  489 U.S. 378, 388 (1989)).  This "stringent standard of fault" requires proof that "policymakers

13  are on actual or constructive notice that a particular omission in their training program causes city

14  employees to violate citizens' constitutional rights."  *Connick*, 563 U.S. at 61; *see also Canton*,

15  489 U.S. at 389 ("[o]nly where a failure to train reflects a 'deliberate' or 'conscious' choice by a

16  municipality—a 'policy' as defined by our prior cases—can a city be liable for such a failure

17  under § 1983.").  The training deficiency must be the "functional equivalent of a decision by the

18  city itself to violate the Constitution."  *Id.*  "The issue is whether the training program is adequate

19  and, if it is not, whether such inadequate training can justifiably be said to represent municipal

20  policy."  *Long v. Cty. of Los Angeles*, 442 F.3d 1178, 1186 (9th Cir. 2006) (citing *Canton*, 489

21  U.S. at 39).

22    In order to establish section 1983 municipal liability based on a failure to train, a plaintiff

23  must show: 1) deprivation of a constitutional right; 2) a training policy that "amounts to deliberate

24  indifference to the [constitutional] rights of the persons with whom [the police] are likely to come

25  into contact"; and 3) that his constitutional injury would have been avoided had the municipality

26  properly trained the officers.  *Blankenhorn v. City of Orange*, 485 F.3d 463, 484 (9th Cir. 2007)

27  (quoting *Canton*, 489 U.S. at 388-89) (first alteration in original).

28    Here, Mitchell alleges that Contra Costa "may have instituted policies or training

addressing some or all of the topics listed [in paragraph 24] but have, either through negligence or deliberate indifference to citizens' rights, failed to properly oversee and enforce such policies and/or training."  Compl. ¶ 25.  He further alleges that Contra Costa "[f]ail[ed] to institute, maintain, or effectively administer and enforce an appropriate training regimen on subjects such as seizures of citizens[.]"  *Id.* at ¶ 24(b); *see also Id.* at ¶ 24(i) (referencing Contra Costa's failure to "have and enforce necessary, appropriate, and lawful . . . training programs to prevent or correct the unconstitutional conduct, customs, and procedures described in this Complaint").  As with the complaint's policy, custom, or practice allegations, these allegations are conclusory and unsupported by any facts.  The complaint contains no allegations about the specific training that was deficient or how it was deficient and does not allege how the training deficiencies resulted in the alleged constitutional violations at issue.  Moreover, the complaint alleges that Contra Costa's training failures were "either through negligence or deliberate indifference to citizens' rights." However, "[m]ere negligence will not suffice to show *Monell* liability" under a failure to train theory.  *Benavidez v. Cty. of San Diego*, 993 F.3d 1134, 1153 (9th Cir. 2021)

Mitchell's *Monell* claim based on an alleged failure to train is dismissed with leave to amend.

### c.   Ratification

A municipality may be liable under section 1983 if "an official with final policy-making authority . . . ratified a subordinate's unconstitutional decision or action and the basis for it." *Rodriguez*, 891 F.3d at 802-03 (quotation marks and citation omitted).  "To show ratification, a plaintiff must prove that the 'authorized policymakers approved a subordinate's decision and the basis for it,'" which accordingly requires, "among other things, knowledge of the alleged constitutional violation."  *Christie v. Iopa*, 176 F.3d 1231, 1239 (9th Cir. 1999) (quoting *City of St. Louis v. Paprotnik*, 485 U.S. 112, 127 (1988)).

The complaint contains the following allegations regarding ratification:

> The unconstitutional actions and/or omissions of [Brook and Emley] . . . were approved, tolerated and/or ratified by policy-making officials for COUNTY.  Plaintiff is informed and believes, and thereupon alleges, the details of this incident have been revealed to the authorized policy makers within COUNTY, and that such policy

10

United States District Court
Northern District of California

makers have direct knowledge of the facts of this incident. Notwithstanding this knowledge, the authorized policy makers within Defendant COUNTY have approved of the conduct of the individually named Defendants and DOES 1-100, and have made a deliberate choice to endorse the decisions of those defendant deputies and the basis for those decisions. By so doing, the authorized policy makers within COUNTY have shown affirmative agreement with the individual defendant deputies' actions, and have ratified the unconstitutional acts of the individual defendant deputies.

Compl. ¶ 27; *see* Pl.'s Opp'n 7. These allegations are conclusory, and the complaint contains no factual allegations to support the claim that unidentified "authorized policy makers . . . have approved of the conduct" of Brook and Emley and "have made a deliberate choice to endorse [their] decisions." Moreover, the complaint fails to allege that any "authorized policymakers" knew of and approved the officers' actions "before the alleged constitutional violations ceased." *See Christie*, 176 F.3d at 1239. Accordingly, Mitchell's *Monell* claim based on a ratification theory is dismissed with leave to amend.

### B.  Supervisory Liability Claim

A defendant may be held liable as a supervisor under section 1983 "if there exists either (1) his or her personal involvement in the constitutional deprivation, or (2) a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation." *Starr v. Baca*, 652 F.3d 1202, 1207 (9th Cir. 2011) (citing *Hansen v. Black*, 885 F.2d 642, 646 (9th Cir. 1989)). If a supervisory official is not directly involved in the allegedly unconstitutional conduct, then "[a] supervisor can be liable in his individual capacity for his own culpable action or inaction in the training, supervision, or control of his subordinates; for his acquiescence in the constitutional deprivation; or for conduct that showed a reckless or callous indifference to the rights of others." *Id.* at 1208 (quoting *Watkins v. City of Oakland*, 145 F.3d 1087, 1093 (9th Cir. 1998)). Liability can be established if the supervisor "knowingly refused to terminate a series of acts by others, which he knew or reasonably should have known would cause others to inflict a constitutional injury." *Dubner v. City & Cty. of San Francisco*, 266 F.3d 959, 968 (9th Cir. 2001).

Mitchell's supervisory liability claim is alleged as follows:

The to-be-identified supervisors each permitted and failed to prevent the unconstitutional acts of other Defendants and individuals under their supervision and control, and failed to properly supervise such

individuals, with deliberate indifference to the rights of Plaintiff.

Each of these supervising Defendants either directed his or her subordinates in conduct that violated Plaintiff's rights, OR set in motion a series of acts and omissions by his or her subordinates that the supervisor knew or reasonably should have known would deprive Plaintiff of rights, OR knew his or her subordinates were engaging in acts likely to deprive Plaintiff of rights and failed to act to prevent his or her subordinate from engaging in such conduct, OR disregarded the consequence of a known or obvious training deficiency that he or she must have known would cause subordinates to violate Plaintiff's rights, and, in fact, did cause the violation of Plaintiff's rights. (See, Ninth Circuit Model Civil Jury Instruction 9.4). Furthermore, each of these supervising Defendants is liable in their failures to intervene in their subordinates' apparent violations of Plaintiff's rights.

Compl. ¶¶ 29-30; *see* Pl.'s Opp'n 4 (describing allegations supporting supervisory liability claim).

These allegations are entirely conclusory, and the complaint contains no factual allegations to support the inference that any CCCSO supervisor was personally involved in the arrest, use of force, and/or alleged fabrication of facts to support Mitchell's prosecution or that there was a causal connection between a supervisor's wrongful conduct and the constitutional violations allegedly committed by Brook and Emley.  *See, e.g., Arteaga v. City of Oakley*, No. 19-CV-05725-JCS, 2020 WL 511876, at *2, 7-8 (N.D. Cal. Jan. 31, 2020) (dismissing supervisory liability claim based on nearly identical allegations).  Accordingly, the supervisory liability claim is dismissed with leave to amend.

## IV.   CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss is granted.  Mitchell's *Monell* claim and supervisory liability claim are dismissed with leave to amend.  Any amended complaint must be filed within 14 days of the date of this order.  Plaintiff must plead his best case. The court will hold an initial case management conference on March 30, 2022 at 1:30 p.m.  A joint case management statement is due by March 23, 2022.

**IT IS SO ORDERED.**

Dated: February 22, 2022



_____
Donna M. Ryu
United States Magistrate Judge