UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KESHAWN FULTON MITCHELL,<br><br>   Plaintiff,<br><br>   v.<br><br>COUNTY OF CONTRA COSTA, et al.,<br><br>   Defendants. | Case No. 21-cv-05014-DMR<br><br>**ORDER ON MOTION TO DISMISS AMENDED COMPLAINT**<br><br>Re: Dkt. No. 27 |

    Plaintiff Keshawn Fulton Mitchell filed a complaint against Defendants County of Contra Costa ("Contra Costa") and law enforcement officers Thomas Brook and Kyle Emley alleging claims arising out of his February 2020 arrest. The court previously dismissed Mitchell's claims for supervisory liability and municipal liability under *Monell v. Department of Social Services of City of New York*, 436 U.S. 658 (1978), and Mitchell filed an amended complaint. Defendants now move pursuant to Federal Rule of Civil Procedure 12(b)(6) to dismiss the amended supervisory liability and *Monell* claims. [Docket No. 27.] This matter is suitable for resolution without a hearing. Civ. L.R. 7-1(b). For the following reasons, the motion is granted in part and denied in part.

**I.   BACKGROUND**

    The complaint contains the following allegations, all of which are taken as true for purposes of this motion.[1] Brook and Emley are officers with the Contra Costa County Sheriff's Office ("CCCSO"). [Docket No. 25 (Am. Compl.) ¶ 5.] On February 27, 2020, Mitchell "was a passenger in a vehicle that had been pursued by law enforcement." *Id*. at ¶ 12 n.1. When the car

---

[1] When reviewing a motion to dismiss for failure to state a claim, the court must "accept as true all of the factual allegations contained in the complaint." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam) (citation omitted).

stopped, Mitchell exited the vehicle and "very briefly, ran before stopping and surrendering to the Defendant Deputies" in accordance with their orders. *Id*. (emphasis removed). After Mitchell surrendered, he was "unnecessarily, repeatedly, and inappropriately struck by Brook and/or Emley." *Id*. at ¶ 12. The officers struck Mitchell with batons and stomped the back of his head while he was face-down on the ground with his arms out. He suffered dental injuries and injury to his head. *Id*.

Mitchell alleges that the officers "materially and deliberately misrepresented their contact" with him by claiming that he ignored their commands "to stop running and get on the ground" after they identified themselves, resulting in a foot chase that ended when Mitchell tried and failed to jump over a fence. *Id*. They also fabricated a report that Mitchell's injuries were caused by an alleged fall, face first, from the fence. Mitchell alleges that he "did not fall face first onto the sidewalk, did not attempt to climb or jump over a wrought iron fence, [and] did not ignore multiple commands from Defendants resulting in a foot chase spanning 200 yards or lasting approximately 1 minute." *Id*. He also alleges that he "did not, at any time, physically resist, threaten, batter, or assault any Defendant," fail to obey any order prior to the officers' use of force, or "delay, obstruct, or interfere" with the officers' duties. *Id*. at ¶ 14.

Mitchell was arrested and charged with violating California Penal Code section 148(a)(1)[2] based on "deliberately fabricated facts." *Id*. at ¶ 13. He alleges that his prosecution "was subject to a Misdemeanor Pre-Trial Diversion Order . . . without a plea." *Id*.

The amended complaint alleges the following claims for relief: 1) a 42 U.S.C. § 1983 claim for violations of the Fourth Amendment based on excessive force, unlawful arrest, and

---

[2] The relevant provision of California Penal Code section 148 states:

> Every person who willfully resists, delays, or obstructs any public officer, peace officer, or an emergency medical technician . . . in the discharge or attempt to discharge any duty of his or her office or employment, when no other punishment is prescribed, shall be punished by a fine not exceeding one thousand dollars ($1,000), or by imprisonment in a county jail not to exceed one year, or by both that fine and imprisonment.

Cal. Penal Code § 148(a)(1).

2

fabrication of material facts against Brook and Emley and Doe Defendants 1 to 100; 2) a 42 U.S.C. § 1983 claim against Contra Costa and Doe Defendants 101 to 200 for a) municipal liability under *Monell* and 2) supervisory liability.

Mitchell filed the complaint on June 29, 2021. On February 22, 2022, the court dismissed the *Monell* and supervisory liability claims with leave to amend. *Mitchell v. Cty. of Contra Costa*, No. 21-CV-05014-DMR, 2022 WL 526161, at *1 (N.D. Cal. Feb. 22, 2022). Mitchell timely filed the amended complaint as well as an errata thereto. [Docket Nos. 25, 26.] Defendants again move to dismiss the *Monell* and supervisory liability claims.

## II.   LEGAL STANDARD

A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of the claims alleged in the complaint. *See Parks Sch. of Bus., Inc. v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995). When reviewing a motion to dismiss for failure to state a claim, the court must "accept as true all of the factual allegations contained in the complaint," *Erickson*, 551 U.S. at 94 (citation omitted), and may dismiss a claim "only where there is no cognizable legal theory" or there is an absence of "sufficient factual matter to state a facially plausible claim to relief." *Shroyer v. New Cingular Wireless Servs., Inc.*, 622 F.3d 1035, 1041 (9th Cir. 2010) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009); *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001)) (quotation marks omitted). A claim has facial plausibility when a plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citation omitted). In other words, the facts alleged must demonstrate "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 554, 555 (2007) (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)); *see Lee v. City of L.A.*, 250 F.3d 668, 679 (9th Cir. 2001), overruled on other grounds by *Galbraith v. Cty. of Santa Clara*, 307 F.3d 1119 (9th Cir. 2002).

As a general rule, a court may not consider "any material beyond the pleadings" when ruling on a Rule 12(b)(6) motion. *Lee*, 250 F.3d at 688 (citation and quotation marks omitted). However, "a court may take judicial notice of 'matters of public record,'" *id*. at 689 (citing *Mack v. S. Bay Beer Distrib.*, 798 F.2d 1279, 1282 (9th Cir. 1986)), and may also consider "documents

1  whose contents are alleged in a complaint and whose authenticity no party questions, but which
2  are not physically attached to the pleading," without converting a motion to dismiss under Rule
3  12(b)(6) into a motion for summary judgment. *Branch v. Tunnell*, 14 F.3d 449, 454 (9th Cir.
4  1994), *overruled on other grounds by Galbraith*, 307 F.3d at 1125-26. The court need not accept
5  as true allegations that contradict facts which may be judicially noticed. *See Mullis v. U.S. Bankr.*
6  *Court*, 828 F.2d 1385, 1388 (9th Cir. 1987).

### III. REQUEST FOR JUDICIAL NOTICE

Mitchell filed a request in which he asks the court to take judicial notice of 17 lawsuits filed in or removed to this district. [Docket No. 33 (Request for Judicial Notice, "RJN").] Fifteen of them correspond to allegations in the amended complaint and its errata about prior lawsuits against Contra Costa, its employees, or the cities in which it provides police services. The lawsuits involve allegations of police misconduct similar to those at issue here, including excessive force and fabrication of charges. RJN Exs. A-K, M-P. The remaining two lawsuits are not referenced in the amended complaint. RJN Exs. L, Q.

Under Rule 201, a court may take judicial notice of "an adjudicative fact if it is 'not subject to reasonable dispute.'" *Khoja v. Orexigen Therapeutics, Inc*., 899 F.3d 988, 999 (9th Cir. 2018) (quoting Fed. R. Evid. 201(b)). A fact is "not subject to reasonable dispute" if it is "generally known" or "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b). Additionally, federal courts may "take notice of proceedings in other courts, both within and without the federal judicial system, if those proceedings have a direct relation to the matters at issue." *U.S. ex rel Robinson Rancheria Citizens Council v. Borneo, Inc.*, 971 F.2d 244, 248 (9th Cir. 1992). Defendants do not object to the court's taking judicial notice of these materials but argue that such notice must be limited to the existence of the filings, and not the truth of the allegations made therein. Reply 6. The court takes judicial notice of the existence of the lawsuits and the allegations of police misconduct therein because they relate to Plaintiff's *Monell* allegations; it does not take judicial notice of the facts within the complaints.

Mitchell also asks the court to take judicial notice of a CBS San Francisco news online

1 article entitled, "Family of Tyrell Wilson reaches $4.5M Settlement With Contra Costa County
2 Over Killing By Deputy," and sets forth what he describes as "the pertinent text" of the article.
3 The RJN includes a link to the online article but Mitchell did not submit its full text.  RJN ¶ 18.
4 Other than generally citing Rule 201, Mitchell offers no authority or analysis to support his
5 request for judicial notice of what he claims is the "pertinent text" of an excerpted news article, so
6 the court declines his request.

7 Finally, Mitchell's counsel submitted a declaration to which he attaches an email regarding
8 the March 11, 2022 verdict in *Hernandez v. County of Contra Costa*, Case No. 20-cv-01183-AGT
9 (N.D. Cal., filed Feb. 17, 2020).  [Docket No. 32-1 (Lagos Decl., Apr. 1, 2022) Ex. A.]  The
10 complaint filed in *Hernandez* is Exhibit L to the RJN.  The court will not consider Lagos's
11 declaration or the email, since it may not consider materials outside the amended complaint in
12 ruling on this motion other than materials that are judicially noticeable or are incorporated by
13 reference into the pleading.  *See Lee*, 250 F.3d at 688-89.  However, the court sua sponte takes
14 judicial notice of the March 11, 2022 jury verdict in *Hernandez* (Docket No. 180), which reflects
15 that the jury found that a Contra Costa County Deputy Sheriff was liable for excessive force and
16 that a second Contra Costa County Deputy Sheriff was liable for the first officer's use of excessive
17 force for failing to intervene, and awarded the plaintiff $250,000 in damages and $300,000 in
18 punitive damages.  *See* Fed. R. Evid. 201(c)(1) ("[t]he court . . . may take judicial notice on its
19 own").

## IV. DISCUSSION

### A. *Monell* Claim

#### 1. Legal Standards for *Monell* Liability

A municipality may face section 1983 liability if it "'subjects' a person to a deprivation of rights or 'causes' a person 'to be subjected' to such deprivation." *Connick v. Thompson*, 563 U.S. 51, 60 (2011) (quoting *Monell*, 436 U.S. at 692).  However, the municipality may be held liable "only for '[its] *own* illegal acts.'"  *Id.* (quoting *Pembaur v. Cincinnati*, 475 U.S. 469, 479 (1986)).  It cannot be held vicariously liable for its employees' actions.  *Id.* (citations omitted).  To establish municipal liability, plaintiffs "must prove that 'action pursuant to official municipal policy' caused

their injury." *Id.* (quoting *Monell*, 436 U.S. at 691). "The 'official policy' requirement was intended to distinguish acts of the *municipality* from acts of *employees* of the municipality, and thereby make clear that municipal liability is limited to action for which the municipality is actually responsible." *Pembaur*, 475 U.S. at 479-80 (emphasis in original). Official municipal policy includes "the decisions of a government's lawmakers, the acts of its policymaking officials, and practices so persistent and widespread as to practically have the force of law." *Connick*, 563 U.S. at 61 (citations omitted). Such policy or practice must be a "moving force behind a violation of constitutional rights." *Dougherty v. City of Covina*, 654 F.3d 892, 900 (9th Cir. 2011) (citing *Monell*, 436 U.S. at 694). An official municipal policy may be either formal or informal. *City of St. Louis v. Praprotnik*, 485 U.S. 112, 131 (1988) (acknowledging that a plaintiff could show that "a municipality's actual policies were different from the ones that had been announced.").

In the Ninth Circuit, a municipality may be liable under section 1983 under three possible theories. *Rodriguez v. Cnty. of Los Angeles*, 891 F.3d 776, 802 (9th Cir. 2018). The first is where "execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflict[ed] the injury." *Id*. (quoting *Monell*, 436 U.S. at 694). "A policy or custom may be found either in an affirmative proclamation of policy or in the failure of an official 'to take any remedial steps after [constitutional] violations.'" *Gomez v. Vernon*, 255 F.3d 1118, 1127 (9th Cir. 2001) (quoting *Larez v. City of Los Angeles*, 946 F.2d 630, 647 (9th Cir. 1991) (holding that a jury could find a policy or custom of using excessive force from the police chief's failure to discipline officers for such conduct)); *see also Hunter v. Cnty. of Sacramento*, 652 F.3d 1225, 1234-35 (9th Cir. 2011) (holding that "evidence of a recurring failure to investigate and discipline municipal officers for constitutional violations can help establish the existence of an unconstitutional practice or custom" of using excessive force).

Second, "a local government can fail to train employees in a manner that amounts to 'deliberate indifference' to a constitutional right, such that 'the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the city can reasonably be said to have been deliberately indifferent to the

6

1  need.'" *Rodriguez*, 891 F.3d at 802 (quoting *City of Canton v. Harris*, 489 U.S. 378, 390 (1989)).

2  Finally, a municipality may be liable under section 1983 if "the individual who committed
3  the constitutional tort was an official with final policy-making authority or such an official ratified
4  a subordinate's unconstitutional decision or action and the basis for it." *Rodriguez*, 891 F.3d at
5  802-03 (quoting *Gravelet-Blondin v. Shelton*, 728 F.3d 1086, 1097 (9th Cir. 2013) (internal
6  quotation marks and citation omitted)).

### 2. Analysis

Mitchell alleges municipal liability based on all three theories: policy, custom, or practice; failure to train; and ratification. *See* Am. Compl. ¶¶ 24-28. Defendants move to dismiss the claim under all three theories.

#### a. Policy, Custom, or Practice

In order to prove a claim for municipal liability based on a policy, custom, or practice, a plaintiff must "demonstrate that an 'official policy, custom, or pattern' on the part of [the defendant] was 'the actionable cause of the claimed injury.'" *Tsao v. Desert Palace, Inc.*, 698 F.3d 1128, 1143 (9th Cir. 2012) (quoting *Harper v. City of Los Angeles*, 533 F.3d 1010, 1022, 1026 (9th Cir. 2008)). "[A] plaintiff may be able to prove the existence of a widespread practice that, although not authorized by written law or express municipal policy, is 'so permanent and well settled as to constitute a custom or usage with the force of law.'" *City of St. Louis*, 485 U.S. at 127 (quoting *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 167-68 (1970)).

Municipalities can be held liable under *Monell* for policies of inaction or omission as well as policies of action or commission. *Jackson v. Barnes*, 749 F.3d 755, 763 (9th Cir. 2014) (citing *Gibson v. Cty. of Washoe*, 290 F.3d 1175, 1185-86 (9th Cir. 2002), *overruled on other grounds in Castro v. Cty. of Los Angeles*, 833 F.3d 1060, 1076 (9th Cir. 2016)). "A policy of action is one in which the government body itself violates someone's constitutional rights, or instructs its employees to do so; a policy of inaction is based on a government body's 'failure to implement procedural safeguards to prevent constitutional violations.'" *Jackson*, 749 F.3d at 763 (quoting *Tsao*, 698 F.3d at 1143). In cases alleging a policy of inaction, a municipality may be responsible through its omissions for "a constitutional violation committed by one of its employees, even

though the municipality's policies were facially constitutional, the municipality did not direct the employee to take the unconstitutional action, and the municipality did not have the state of mind required to prove the underlying violation." *Gibson*, 290 F.3d at 1185-86. In such cases, the plaintiff must establish that the policy "amounts to deliberate indifference to the plaintiff's constitutional right," which requires showing that the government body "was on actual or constructive notice that its omission would likely result in a constitutional violation." *Tsao*, 698 F.3d at 1143, 1145 (citations and quotation marks omitted).

A plaintiff can "establish the existence of an unconstitutional practice or custom," such as "an informal but widespread custom of using excessive force," through "evidence of a recurring failure to investigate and discipline officers for" such violations. *Hunter*, 652 F.3d at 1234-35. In such cases, "evidence of inaction" by the municipality "can support an inference that an unconstitutional custom or practice has been unofficially adopted by a municipality," despite an official policy prohibiting the unconstitutional act. *Id*. at 1234 n.8. In other words, evidence of inaction—e.g., failure to discipline—can support the existence of an unconstitutional policy of action—e.g., excessive use of force.

The court previously dismissed this claim because Mitchell made boilerplate allegations that were conclusory and lacked factual support; in particular, the court held that the complaint "fail[ed] to allege facts to support an inference that that the practices were 'widespread' and so 'well settled as to constitute a custom or usage.'" *Mitchell*, 2022 WL 526161, at *4-5 (quoting *City of St. Louis*, 485 U.S. at 127).

In the amended claim, Mitchell alleges that Brook and Emley acted pursuant to the following alleged customs, policies, practices, and/or procedures of CCCSO:

> a. Failure to supervise and/or discipline deputies for misconduct that results in the violation of citizens' civil rights; and/or,
>
> b. Failing to institute, maintain, or effectively administer and enforce an appropriate training regimen on subjects such as seizures of citizens and/or the use of force; and/or
>
> c. Using or tolerating excessive and/or unjustified force; and/or
>
> d. Using or tolerating excessive force on individuals that engage deputies in vehicle pursuits or foot chases, as a way of retaliating and

8

"punishing" such individuals by inflicting "street justice" and later claiming such individuals were "resisting"; and/or fabricating facts so as to criminally charge civilians; and/or

e. Using or tolerating inadequate, deficient, and/or improper procedures for handling, investigating, and reviewing complaints of excessive force or officer misconduct; and/or

f. Covering up violations of constitutional rights by any or all of the following:

> i. by failing to properly investigate and/or evaluate complaints or incidents of excessive and unreasonable force, unlawful seizures, or fabrication of incident reporting; and/or,
>
> ii. by ignoring and/or failing to properly and adequately investigate and discipline unconstitutional or unlawful activity by deputies; and/or,
>
> iii. by allowing, tolerating, and/or encouraging deputies to: file incomplete and inaccurate incident reports; and/or make false statements so as to encourage the filing of criminal complaints to assist the Deputies' cover-up of their illegal conduct; and, obstruct and/or interfere with investigations of unconstitutional or unlawful conduct by deputies, by withholding and/or concealing material information;

g. To allow, tolerate, and/or encourage a "code of silence" among deputies and/or law enforcement personnel, whereby a deputy or other member of CCCSO does not provide adverse information against a fellow deputy and/or law enforcement personnel;

h. To use or tolerate inadequate, deficient, and/or improper procedures for handling, investigating, and reviewing complaints of law enforcement officer misconduct; and

i. To fail to have and **enforce** necessary, appropriate, and lawful policies, procedures, and training programs to prevent or correct the unconstitutional conduct, customs, and procedures described in this Complaint and in subparagraphs (a) through (h) above, with deliberate indifference to the rights and safety of Plaintiff and the public, and in the face of an obvious need for such policies, procedures, and training programs; and,

j. The existence of County's de factor lip service to their own department policies and/or training **requiring** line Deputies to **follow** written official department policy and/or training provided to Deputies thereby encouraging and facilitating continued violation of citizens' constitutional rights by its Deputies.

Am. Compl. ¶ 24 (emphasis in original).

The amended complaint adds allegations about 15 lawsuits against Contra Costa, its employees, or the cities in which it provides police services dating from 2004 to 2021. *See id*. at ¶

27; Errata. Thirteen of them were filed prior to the incident at issue in this lawsuit; two were filed after. Nearly all involve allegations of excessive force and many also include allegations of "manufactured charges" or false or misleading police reports. Several of the incidents involve allegations similar to those made by Mitchell in this case, such as the use of excessive force against compliant citizens, including while one citizen had his hands up (*Id*. at ¶ 27(9)) and another while the citizen was in handcuffs (Errata), as well as fabrication and misrepresentation of facts, including for the purpose of "manufacturing charges." (Am. Compl. ¶ 27(6), (10)).

Defendants argue that the allegations of policies, customs, and practices remain boilerplate and that the amended complaint's citations to "unrelated litigation" fail to show a plausible entitlement to relief. They devote several pages to explaining how the other cases are distinguishable from the alleged misconduct in this case and contend that none of the lawsuits establish any wrongdoing by CCCSO. Mot. 7-14.

The Ninth Circuit has used a two-part rule to evaluate whether factual allegations supporting a *Monell* claim are adequately pled:

> First, to be entitled to the presumption of truth, allegations in a complaint or counterclaim may not simply recite the elements of a cause of action, but must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively. Second, the factual allegations that are taken as true must plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation.

*A.E. ex rel. Hernandez v. Cty. of Tulare*, 666 F.3d 631, 637 (9th Cir. 2012) (quoting *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011)). *See, e.g., Mateos-Sandoval v. Cty. of Sonoma*, 942 F. Supp. 2d 890, 899-900 (N.D. Cal. 2013) (applying *Starr* rule to evaluate *Monell* allegations); *Perryman v. City of Pittsburg*, 545 F. Supp. 3d 796, 800-02 (N.D. Cal. Feb. 10, 2021) (same).

As to the first part of the *Starr* rule, here the court finds that the amended complaint "contain[s] sufficient allegations of underlying facts to give [Defendants] fair notice" of the claim. *See Starr*, 652 F.3d at 1216. It identifies at least several "customs, policies, practices, and/or de facto procedures" that Mitchell alleges were the moving force behind the alleged violations committed by Brook and Emley. Am. Compl. ¶ 24. These include customs or policies of using or

1   tolerating excessive force; using excessive force on individuals as a way of punishing them and
2   later fabricating facts so as to charge such individuals; and allowing, tolerating, and/or
3   encouraging deputies to file incomplete and inaccurate incident reports and make false statements
4   to assist in covering up illegal conduct. *Id*. at ¶ 24(c), (d), (f).

5   The amended complaint identifies 15 other lawsuits against Contra Costa and related
6   individuals or entities. *See* Am. Compl. ¶ 27; RJN Exs. A-K, M-P. As discussed above, these
7   lawsuits involve allegations of excessive force and fabrication of criminal charges similar to those
8   alleged by Mitchell. *See Perryman*, 545 F. Supp 3d at 800-01 (discussing allegations of 10
9   lawsuits filed against defendant municipality involving allegations of injuries resulting from
10  encounters with police that were similar to the plaintiff's (citing *Starr*, 652 F.3d at 1216 (finding
11  plaintiff's allegations of specific and numerous other incidents involving conduct similar to that
12  complained of by the plaintiff and notice of all incidents as sufficient for *Monell* pleading)). They
13  support Mitchell's allegation that Contra Costa was aware of its deputies' unlawful conduct,
14  including the use of excessive or unconstitutional force and fabrication of material facts, and that
15  the deputies acted consistent with the alleged customs and practices. *See* Am. Compl. ¶¶ 27, 28;
16  *Mateos–Sandoval v. Cty. of Sonoma*, 942 F. Supp. 2d at 899 (holding that detailed allegations
17  "specify[ing] the content of the policies, customs, or practices . . . are sufficient to 'give fair notice
18  and to enable the opposing party to defend itself effectively,' particularly since information
19  relating to the policies, customs, and practices of County Defendants . . . is likely to be easily
20  available to them"); *Robertson v. Bruckert*, No. 19-CV-01918-SI, 2021 WL 4990236, at *3 (N.D.
21  Cal. Oct. 27, 2021) (allegations in proposed amended complaint that "detail[ed] [the defendant
22  officer's] conduct with specificity" and "present[ed] sufficient details on . . . five prior exemplary
23  incidents of excessive force" were sufficient "to enable the City to defend itself" for purposes of
24  proposed *Monell* claim based on custom or policy).

25  As to the second part of the *Starr* rule, taking the allegations as true, the court concludes
26  that at this stage, it is plausible that Mitchell's alleged constitutional injuries arose as a result of at
27  least the following claimed policies, practices, or customs: using or tolerating excessive and/or
28  unjustified force; using or tolerating excessive force on individuals as a form of retaliation or

11

1  punishment for engaging deputies in vehicle pursuits or foot chases, and later claiming such
2  individuals were "resisting"; and fabricating facts so as to criminally charge civilians. *See*
3  *Perryman*, 545 F. Supp. 3d at 801-02 (discussing that there is no probability requirement at the
4  pleading stage). Accordingly, Defendants' motion to dismiss the *Monell* claim based on policies,
5  customs, or practices is denied.

### b. Failure to Train

Under limited circumstances, "a local government's decision not to train certain employees about their legal duty to avoid violating citizens' rights may rise to the level of an official government policy for purposes of § 1983." *Connick*, 563 U.S. at 61. However, "[a] municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train." *Id*. In order to establish liability under this theory, the "municipality's failure to train its employees in a relevant respect must amount to 'deliberate indifference to the rights of persons with whom the [untrained employees] come into contact.'" *Id.* (citing *Canton v. Harris*, 489 U.S. 378, 388 (1989)). This "stringent standard of fault" requires proof that "policymakers are on actual or constructive notice that a particular omission in their training program causes city employees to violate citizens' constitutional rights." *Connick*, 563 U.S. at 61; *see also Canton*, 489 U.S. at 389 ("[o]nly where a failure to train reflects a 'deliberate' or 'conscious' choice by a municipality—a 'policy' as defined by our prior cases—can a city be liable for such a failure under § 1983."). The training deficiency must be the "functional equivalent of a decision by the city itself to violate the Constitution." *Id*. "The issue is whether the training program is adequate and, if it is not, whether such inadequate training can justifiably be said to represent municipal policy." *Long v. Cty. of Los Angeles*, 442 F.3d 1178, 1186 (9th Cir. 2006) (citing *Canton*, 489 U.S. at 39).

In order to establish section 1983 municipal liability based on a failure to train, a plaintiff must show: 1) deprivation of a constitutional right; 2) a training policy that "amounts to deliberate indifference to the [constitutional] rights of the persons with whom [the police] are likely to come into contact"; and 3) that his constitutional injury would have been avoided had the municipality properly trained the officers. *Blankenhorn v. City of Orange*, 485 F.3d 463, 484 (9th Cir. 2007)

12

(quoting *Canton*, 489 U.S. at 388-89) (first alteration in original).

Mitchell alleges that Contra Costa "may have instituted policies or training addressing some or all of the topics listed [in paragraph 24] but have, through deliberate indifference to citizens' rights, deliberately refused to properly oversee, enforce, and/or properly carry out such policies and/or training." Am. Compl. ¶ 25. He further alleges that Contra Costa "[f]ail[ed] to institute, maintain, or effectively administer and enforce an appropriate training regimen on subjects such as seizures of citizens and/or the use of force[.]" *Id*. at ¶ 24(b); *see also id*. at ¶ 24(i) (referencing Contra Costa's failure to "have and/or **enforce** necessary, appropriate, and lawful . . . training programs to prevent or correct the unconstitutional conduct, customs, and procedures described in this Complaint" (emphasis in original)). As with the original complaint's failure-to-train allegations, the allegations in the amended complaint remain conclusory and unsupported by any facts. The complaint contains no allegations about the specific training that was deficient or how it was deficient and does not allege how the training deficiencies resulted in the alleged constitutional violations at issue.

Accordingly, Mitchell's *Monell* claim based on an alleged failure to train is dismissed. He may seek leave to amend the complaint to add a *Monell* training claim if timely and if discovery supports it.

### c. Ratification

A municipality may be liable under section 1983 if "an official with final policy-making authority . . . ratified a subordinate's unconstitutional decision or action and the basis for it." *Rodriguez*, 891 F.3d at 802-03 (quotation marks and citation omitted). "To show ratification, a plaintiff must prove that the 'authorized policymakers approved a subordinate's decision and the basis for it,'" which accordingly requires, "among other things, knowledge of the alleged constitutional violation." *Christie v. Iopa*, 176 F.3d 1231, 1239 (9th Cir. 1999) (quoting *City of St. Louis v. Paprotnik*, 485 U.S. 112, 127 (1988)).

The amended complaint contains the following allegations regarding ratification:

> The unconstitutional actions and/or omissions of [Brook and Emley] . . . were approved, tolerated and/or ratified by policy-making officials for CCCSO. COUNTY and CCCSO had notice from the prior

13

> lawsuits listed above, as well as from citizen complaints that never made it to the lawsuit stage, that its deputies were acting contrary to department policy, training, and the United States Constitution **but** consistent with the de facto custom and practice as alleged herein. Said citizen complaints are presently unknown to Plaintiff. Plaintiff is informed and believes, and thereupon alleges, the details of this incident have been revealed to the authorized policy makers within CCCSO, and that such policy makers have direct knowledge of the facts of this incident. Notwithstanding this knowledge, the as-yet-unknown authorized policy makers within CCCSO have approved of the conduct of Brook and Emley and DOES 1-100, and have made a deliberate choice to endorse the decisions of those defendant deputies and the basis for those decisions. By so doing, the authorized policy makers within CCCSO have shown affirmative agreement with the individual defendant deputies' actions, and have **ratified** the unconstitutional acts of the individual defendant deputies.

Am. Compl. ¶ 28 (emphasis in original).

These allegations are conclusory, and the amended complaint does not contain factual allegations to support the claim that unidentified "authorized policy makers . . . have approved of the conduct" of Brook and Emley and "have made a deliberate choice to endorse [their] decisions." Specifically, the amended complaint contains no allegations about any actions that policymakers took in connection with their "approval" of the misconduct that would support an inference that they actually ratified Brook and Emley's alleged misconduct. "A mere failure to overrule a subordinate's actions, without more, is insufficient to support a § 1983 claim." *Lytle v. Carl*, 382 F.3d 978, 987 (9th Cir. 2004) (discussing a ratification theory of *Monell* liability). *Compare Robertson*, 2021 WL 4990236, at *4 (finding ratification adequately pled where proposed amended complaint alleged police chief "expressly ratif[ied] the internal affairs investigation" into the plaintiff's shooting where officer was exonerated and municipality "'specifically found' that officer's conduct in the various civil rights incidents was appropriate"), *with Perryman*, 545 F. Supp. 3d at 803 (finding ratification theory insufficient where pleading "failed to plead facts as to *how* policymakers ratified police conduct (emphasis in original)).

Moreover, the amended complaint does not allege that any "authorized policymakers" knew of and approved the officers' actions "before the alleged constitutional violations ceased." *See Christie*, 176 F.3d at 1239. Accordingly, Mitchell's *Monell* claim based on a ratification theory is dismissed. He may seek leave to amend the complaint to add a *Monell* ratification claim if timely and if discovery supports it.

### B. Supervisory Liability

A defendant may be held liable as a supervisor under section 1983 "if there exists either (1) his or her personal involvement in the constitutional deprivation, or (2) a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation." *Starr v. Baca*, 652 F.3d 1202, 1207 (9th Cir. 2011) (citing *Hansen v. Black*, 885 F.2d 642, 646 (9th Cir. 1989)). If a supervisory official is not directly involved in the allegedly unconstitutional conduct, then "[a] supervisor can be liable in his individual capacity for his own culpable action or inaction in the training, supervision, or control of his subordinates; for his acquiescence in the constitutional deprivation; or for conduct that showed a reckless or callous indifference to the rights of others." *Id.* at 1208 (quoting *Watkins v. City of Oakland*, 145 F.3d 1087, 1093 (9th Cir. 1998)). Liability can be established if the supervisor "knowingly refused to terminate a series of acts by others, which he knew or reasonably should have known would cause others to inflict a constitutional injury." *Dubner v. City & Cty. of San Francisco*, 266 F.3d 959, 968 (9th Cir. 2001).

Mitchell's supervisory liability claim is alleged as follows:

> Plaintiff is not yet aware of the identity of supervisors who participated in the constitutional wrongs alleged in this Amended Complaint. The to-be-identified supervisors each permitted and failed to prevent the unconstitutional acts of other Defendants and individuals under their supervision and control, and failed to properly supervise such individuals, with deliberate indifference to the rights of Plaintiff.
>
> Each of these supervising Defendants either directed his or her subordinates in conduct that violated Plaintiff's rights, OR set in motion a series of acts and omissions by his or her subordinates that the supervisor knew or reasonably should have known would deprive Plaintiff of rights, OR knew his or her subordinates were engaging in acts likely to deprive Plaintiff of rights and failed to act to prevent his or her subordinate from engaging in such conduct, OR disregarded the consequence of a known or obvious training deficiency that he or she must have known would cause subordinates to violate Plaintiff's rights, and, in fact, did cause the violation of Plaintiff's rights. (See, Ninth Circuit Model Civil Jury Instruction 9.4). Furthermore, each of these supervising Defendants is liable in their failures to intervene in their subordinates' apparent violations of Plaintiff's rights.

Am. Compl. ¶¶ 30-31.

Like the supervisory liability allegations in the original complaint, these allegations are entirely conclusory, and the complaint contains no factual allegations to support the inference that

1 any CCCSO supervisor was personally involved in the arrest, use of force, and/or alleged fabrication of facts to support Mitchell's prosecution or that there was a causal connection between a supervisor's wrongful conduct and the constitutional violations allegedly committed by Brook and Emley. *See, e.g., Arteaga v. City of Oakley*, No. 19-CV-05725-JCS, 2020 WL 511876, at *2, 7-8 (N.D. Cal. Jan. 31, 2020) (dismissing supervisory liability claim based on nearly identical allegations). Accordingly, the supervisory liability claim is dismissed. He may seek leave to amend the complaint to add a claim for supervisory liability if timely and if discovery supports it.

## V. CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss is granted in part and denied in part. The motion to dismiss the *Monell* claim based on policy, custom, or practice is denied. Mitchell's *Monell* claim based on failure-to-train and ratification theories and his supervisory liability claim are dismissed.

**IT IS SO ORDERED.**

Dated: April 26, 2022



Donna M. Ryu
United States Magistrate Judge

16