UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KESHAWN FULTON MITCHELL,<br><br>Plaintiff,<br><br>v.<br><br>THOMAS BROOK, et al.,<br><br>Defendants. | Case No. 21-cv-05014-DMR<br><br>**ORDER GRANTING DEFENDANTS' MOTION TO DISMISS**<br><br>Re: Dkt. No. 98 |

Plaintiff Keshawn Fulton Mitchell filed a complaint under 42 U.S.C. § 1983 alleging constitutional violations arising out of his February 2020 arrest. Defendants Thomas Brook and Kyle Emley now move to dismiss the second amended complaint pursuant to 28 U.S.C. § 1915(e). [Docket No. 98.] The court held a hearing on June 22, 2023. For the following reasons, the motion is granted.

**I.   BACKGROUND[1]**

   **A.   Factual Background and Procedural History**

Mitchell's original complaint alleged a 42 U.S.C. § 1983 claim for violations of the Fourth Amendment based on excessive force, unlawful arrest, and fabrication of material facts against Brook and Emley and section 1983 claims against Contra Costa for municipal liability under *Monell v. Department of Social Services of City of New York*, 436 U.S. 658 (1978), and supervisory liability. Mitchell amended the complaint twice. The SAC, which is the operative complaint, alleged two claims: 1) a section 1983 claim for violations of the Fourth Amendment

---

[1] The court set forth a detailed factual and procedural history of this case in its April 17, 2023 Order on Defendants' Motion for Summary Judgment and does not repeat it here. *See Mitchell v. Cnty. of Contra Costa*, No. 21-CV-05014-DMR, 2023 WL 2977250, at *1-4 (N.D. Cal. Apr. 17, 2023).

based on excessive force, malicious prosecution, and fabrication of material facts against Brook and Emley; and 2) a section 1983 claim against Contra Costa under *Monell v. Department of Social Services of City of New York*, 436 U.S. 658 (1978), based on policies, customs, or practices related to excessive force and fabricating facts.

Defendants moved for summary judgment on Mitchell's malicious prosecution, fabrication of material facts, and *Monell* claims. On April 17, 2023, the court granted the motion as to the malicious prosecution and fabrication of evidence claims and held the motion for summary judgment on the *Monell* claim in abeyance pending resolution of a related discovery dispute. *Mitchell*, 2023 WL 2977250, at *8-10. The parties subsequently stipulated to dismiss the *Monell* claim without prejudice. [Docket No. 101.] Therefore, the sole remaining claim is Mitchell's Fourth Amendment excessive force claim.

**B.    Mitchell's *In Forma Pauperis* Application and Evidence of His Finances**

Mitchell filed an application to proceed in forma pauperis ("IFP") on June 29, 2021. [Docket No. 2 (IFP Application).] In his application, he checked "no" in response to the question, "Are you presently employed?" He also responded that the only money that he had received within the past 12 months from various enumerated sources, including "Federal or State welfare payments, Social Security or other government source," was $1,800 monthly California state disability payments. *Id*. at 1, 2. In response to the question, "Do you own any cash?" he checked "yes" and wrote, "$500.00. Mitchell signed the application under penalty of perjury on June 25, 2021, acknowledging that he understood "that a false statement herein may result in the dismissal of [his] claims." *Id*. at 4. The court granted Mitchell's IFP application on June 30, 2021. [Docket No. 6.]

At his September 2022 deposition, Mitchell testified that he is a painter and was unemployed on February 27, 2020, the date of the incident. He also testified that he had not worked since November or December 2019. [Docket No. 99 (Rodriquez Decl. May 9, 2023) ¶ 3, Ex. A (Mitchell Dep.) 20, 49-50, 60.][2]

---

[2] In response to an interrogatory asking him to state all employment he has had for the past five years, Mitchell wrote that he "does not remember the exact dates," but started working for a

1       On May 8, 2023, following an order on Defendants' motion to compel discovery, Mitchell
2  produced a copy of his April 2021 application for a Paycheck Protection Program loan ("PPP
3  loan") from the United States Small Business Administration ("SBA").  Rodriquez Decl. ¶ 5; Ex.
4  C (PPP loan application).  On his application, Mitchell wrote that he was the owner and sole
5  proprietor of a construction company doing business as "Keshawn mitchell [sic]"; that the
6  company had a single employee with an average monthly payroll of $7,990.00; and that he sought
7  a loan to cover payroll costs.  *Id*.; Mot. 4 n.2.  Mitchell signed the application on April 10, 2021,
8  certifying that the information provided in the application "is true and accurate in all material
9  respects" and acknowledging that "knowingly making a false statement to obtain a guaranteed
10 loan from SBA is punishable under the law."  *Id*.  Mitchell received loan proceeds of $19,975.00
11 on the same date, April 10, 2021.  Rodriquez Decl. ¶ 6, Ex. D.

## II.     LEGAL STANDARD

"The clerk of each district court shall require the parties instituting any civil action, suit or proceeding in such court, whether by original process, removal or otherwise, to pay a filing fee of $350 . . ."  28 U.S.C. § 1914(a).  Under 28 U.S.C. § 1915(a)(1), courts may "authorize the commencement, prosecution or defense of any suit, action or proceeding . . . without prepayment of fees . . . by a person who submits an affidavit that includes a statement of all assets such [person] possesses that the person is unable to pay such fees . . ."  28 U.S.C. § 1915(a)(1).  Section 1915, the IFP statute, "is designed to ensure that indigent litigants have meaningful access to the federal courts," *Neitzke v. Williams*, 490 U.S. 319, 324 (1989), and "to guarantee that no citizen shall be denied an opportunity to commence, prosecute, or defend an action, civil or criminal, in any court of the United States, solely because . . . poverty makes it impossible . . . to pay or secure the costs of litigation."  *Denton v. Hernandez*, 504 U.S. 25, 31 (1992) (quotation marks omitted) (quoting *Adkins v. E.I. DuPont de Nemours & Co.*, 335 U.S. 331, 342 (1948)).

---

painting contractor "around April 3, 2019."  He also wrote that he worked as an "assistant" from "around May 1, 2020 and stopped on or after July 1, 2020."  Rodriquez Decl. ¶ 4, Ex. B (Interrogatory Responses).  Mitchell signed the response under penalty of perjury on May 20, 2022.  *Id*.  The response does not contain any information about wages or pay he received for such employment.

An individual need not "be absolutely destitute to enjoy the benefit of the [IFP] statute." *Adkins*, 335 U.S. at 339. An affidavit supporting an IFP application is sufficient if it "states that one cannot because of his poverty pay or give security for the costs and still be able to provide himself and dependents with the necessities of life." *Id.* (internal quotation marks omitted). However, section 1915(e) provides that "the court shall dismiss the case at any time if the court determines that . . . the allegation of poverty is untrue." 28 U.S.C. § 1915(e)(2)(A). The dismissal of an action under this provision is a "sanction[ ] to protect against false affidavits." *Adkins*, 335 U.S. at 338. Courts have held that dismissal under section 1915(e) is mandatory when a court finds that allegations of poverty in an IFP application are untrue. *See Oquendo v. Geren*, 594 F. Supp. 2d 9, 11 (D.D.C. 2009) ("[b]ecause the statute uses the command 'shall,' dismissal is mandatory in the face of untrue allegations of poverty," collecting cases); *see also Lopez v. Smith*, 203 F.3d 1122, 1126 (9th Cir. 2000) ("Section 1915(e) replaced former section 1915(d), which provided that a district court 'may dismiss the case if the allegation of poverty is untrue, or if satisfied that the action is frivolous or malicious.'" (quoting 28 U.S.C. § 1915(d) (1994)). To dismiss a complaint under section 1915(e)(2), "a showing of bad faith is required, not merely inaccuracy." *Escobedo v. Applebees*, 787 F.3d 1226, 1235 n.8 (9th Cir. 2015) (finding "[n]o significant misrepresentation was made regarding [the plaintiff's] expenses" where she averred that she paid "rent" even though she and her husband owned their house and the evidence suggested the amount of "rent" she disclosed was not "significantly different from what . . . she paid for her mortgage").

"Where the applicant has knowingly provided inaccurate information on his or her IFP application, the dismissal may be with prejudice." *Steshenko v. Gayrard*, No. 13-CV-03400-LHK, 2015 WL 1503651, at *5 (N.D. Cal. Apr. 1, 2015) (collecting cases), *aff'd sub nom. Steshenko v. Albee*, 691 F. App'x 869 (9th Cir. 2017).

### III. ANALYSIS

Defendants move to dismiss Mitchell's action with prejudice based on the fact that he did not disclose the $19,975 PPP loan he received in April 2021 from the IFP application he submitted two months later, in June 2021, in which he reported receiving only monthly California state

4

disability payments for the previous 12 months.[3]

Mitchell admits that his lawyer told him that the IFP application "was for the purpose of potentially waiving the filing fee" in his case. [Docket No. 102-4 (Mitchell Decl. May 15, 2023) ¶ 4.] He does not dispute that he failed to disclose the PPP funds in his IFP application and concedes that money from the PPP loan "clearly" was money from an "other government source" that should have been disclosed. Opp'n 4. He also admits that he lied in his PPP loan application, and that his certified statements that he was a sole proprietor of a business with an average monthly payroll of $7,990 were false. Mitchell Decl. ¶ 2. According to Mitchell, he kept half of the money from the PPP loan and the other half went "to the other person who joined in the false application and who prepared and filed the application" on their behalf. *Id*. at ¶ 3.

Mitchell's attorney, Panos Lagos, submitted a declaration in which he describes the process by which he completed the IFP application on Mitchell's behalf. [Docket No. 102-1 (Lagos Decl. May 17, 2023).] He states that he prepared a "rough draft" of the IFP application during a June 21, 2021 meeting with Mitchell. He asked Mitchell "the questions in the application and in the order set forth therein" and handwrote his responses on the form. *Id*. at ¶ 3; Ex. 1. Mitchell did not have a copy of the IFP application before him during this process. Lagos Decl. ¶ 3. Lagos states that pursuant to his usual process, Lagos had Mitchell sign a blank version of the application. Lagos then gave Mitchell's responses to his paralegal "for the transmission of the information onto the already-signed document for its ultimate filing with the Court" to "avoid an unnecessary trip to the office by the client." *Id*. at ¶ 4.

Notwithstanding the fact that he did not disclose the $19,975 PPP funds in his IFP application, Mitchell states that he answered Lagos's questions from the application "truthfully." Mitchell Decl. ¶ 4. He states, "I did not intentionally hide the receipt of the PPP money. I did not think of the receipt of that money at the time when answering Mr. Lagos' questions—for whatever reason. I do know that I did not intentionally try to hide that information." *Id*. at ¶ 5. He provides

---

[3] Defendants also note that Mitchell did not disclose the PPP loan at deposition and did not disclose it in written discovery responses. *See* Mot. 5-6. Mitchell disputes that his discovery responses were inaccurate and/or untruthful. Opp'n 2. The court need not resolve this dispute in connection with this motion.

no other explanation.

Mitchell acknowledges that he provided an inaccurate response to the question about the amount of money he had received in the previous 12 months but argues that the court should not dismiss his case because he did not do so intentionally or in bad faith. Opp'n 4. He asserts that he is not "an experienced litigator" and that this case is his "one and only civil filing," arguing that this case is distinguishable from others in which courts have dismissed complaints under section 1915(e)(2)(A) where the IFP applicants were "experienced litigant[s]" who were familiar with IFP status. *Id*. at 3, 4 (citing *Witkin v. Lee*, No. 2:17-cv-0232-JAM-EFB P, 2020 WL 2512383, at *6 (E.D. Cal. May 15, 2020) (plaintiff's "deceptive conduct" shown in part where he had obtained IFP status in six prior cases and applied for IFP status in three cases filed after the instant case). Additionally, Mitchell explains that he has no post-high school formal education, having graduated from high school in 2018 with a B- grade average, Mitchell Decl. ¶ 8, describing this as "[f]urther context within which to understand (not excuse) that [his] omission was unintentional." Opp'n 4.

In *Witkin*, the court noted that "[c]ourts have not been totally uniform in their application of § 1915(e)(2)(A)," but after an extensive survey of cases applying the statute, the court concluded that "the essential questions" are "(1) was plaintiff's allegation of poverty untrue and, if so, (2) did plaintiff submit the untrue IFP application in bad faith?" 2020 WL 2512383, at *3-5.

In this case, it is undisputed that Mitchell received $19,975 in proceeds from a fraudulent PPP loan and did not disclose the existence of the money in the IFP application he filed just two months later. Had he properly disclosed the money he received from the PPP loan in his IFP application, the court would have denied the application. The PPP loan proceeds were therefore material to the court's determination of his qualification for IFP status and his allegation of poverty was untrue. *See, e.g., Steshenko*, 2015 WL 1503651, at *7 (finding misrepresentation of "material information" where plaintiff failed to disclose ownership of a real property valued at $369,000 and concluding that it would have denied his IFP applications had he properly disclosed that information).

Turning to whether Mitchell acted in bad faith, the parties did not brief the requisite

1  showing of "bad faith" required for dismissal under section 1915(e) and the court was unable to
2  find Ninth Circuit authority on this issue.  The Second Circuit has held that in the context of
3  section 1915(e)(2)(A), "[b]ad faith . . . includes deliberate concealment of income in order to gain
4  access to a court without prepayment of filing fees." *Vann v. Comm'r of N.Y. City Dep't of*
5  *Correction*, 496 F. App'x 113, 115 (2d Cir. 2012) (citing *Cuoco v. U.S. Bureau of Prisons*, 328 F.
6  Supp. 2d 463, 467-68 (S.D.N.Y. 2004)).

7        Mitchell has not credibly explained how he inadvertently omitted the large sum of PPP
8  money from his IFP application.  He admits he understood that the reason he was providing his
9  financial information was to seek a waiver of the filing fee in his case.  He states in vague and
10 conclusory words that he did not "intentionally hide" his receipt of PPP funds and that he "did not
11 think of the receipt of that money when answering Mr. Lagos' questions—for whatever reason."
12 Mitchell Decl. ¶¶ 4, 5.  However, there are obvious reasons why it was not in Mitchell's interest to
13 disclose the funds; namely, to avoid revealing his fraudulent PPP loan to his lawyer and to qualify
14 for a fee waiver.  His self-serving, barebones explanation for the omission is simply not
15 believable, particularly given that Mitchell received the sizeable PPP funds just two months before
16 completing the IFP application.  *See, e.g., Hash v. Rallos*, No. 2:20-CV-1272 TLN AC P, 2022
17 WL 951231, at *4, n.3 (E.D. Cal. Mar. 30, 2022), *report and recommendation adopted,* No. 2:20-
18 CV-01272-TLN-AC, 2022 WL 2181764 (E.D. Cal. June 16, 2022) (denying motion to dismiss
19 under section 1915(e) where plaintiff who was the beneficiary of a trust presented evidence that he
20 had not received any funds from the trust in ten years, had no way to access money in the trust,
21 and had been told that the trustee would not give the plaintiff any money from the trust;
22 distinguishing dismissals "due to untrue allegations of poverty" that involved "evidence of the
23 plaintiffs' assets at or immediately preceding the time of filing.").

24       The court recognizes that Mitchell is not an experienced litigant, distinguishing this case
25 from other dismissals involving litigants familiar with IFP status.  *See, e.g., Cuoco v. U.S. Bureau*
26 *of Prisons*, 328 F. Supp. 2d 463, 466, 48-69 (S.D.N.Y. 2004) (dismissing complaint with prejudice
27 where plaintiff was an experienced litigant who had filed over 20 civil IFP actions against the
28 government in federal court and had "created an illusion of poverty through a series of deceptive

1  acts," including diverting "$13,500 in settlements" to her mother). Nevertheless, Mitchell has a
2  high school education. He does not contend that he did not understand the relevant question
3  asking whether he had received any money from any "government source" in the previous 12
4  months. In fact, he understood the question sufficiently to answer "yes" and disclose state
5  monthly disability payments. He also acknowledges that he knew the purpose of the application
6  was to provide information about his finances in order to obtain a waiver of the filing fee in his
7  case. *See Steshenko*, 2015 WL 1503651, at *8 ("[t]he IFP applications ask simple, straightforward
8  questions"). Nor does Mitchell contend that the process his lawyer used to complete the IFP
9  application, with Lagos reading the questions to him, caused Mitchell uncertainty or confusion
10 about what responsive information to provide to his lawyer.

11 At the hearing, Mitchell's counsel cited the question on the IFP application about whether
12 he owned any cash, to which Mitchell disclosed $500. Counsel asserted that it was "conceivable"
13 that by the time he completed the IFP application, Mitchell had already spent the proceeds of the
14 PPP loan and actually had only $500 in his possession. In other words, counsel suggests that the
15 allegation of poverty in the application may not have been untrue. While this may have been a
16 reasonable account for the failure to disclose the PPP funds, Mitchell himself does not offer that
17 explanation even though he had the opportunity to do so. *See generally* Mitchell Decl.

18 In sum, the record does not support a finding that Mitchell's omission of the PPP funds
19 from his IFP application was a "mere[ ] inaccuracy," *see Escobedo*, 787 F.3d at 1235 n.8, or a
20 "misstatement[ ], or minor misrepresentation[ ] made in good faith." *See Vann*, 496 F. App'x at
21 115. Instead, the record supports a finding that Mitchell knowingly and intentionally hid the fact
22 that he had a sizeable amount of PPP funds which he received only two months before submitting
23 his IFP application. Accordingly, dismissal under section 1915(e)(2) is appropriate. As to
24 whether the dismissal should be with prejudice, courts have held that "for dismissal to be an
25 effective sanction, it must be with prejudice." *Li Liu v. Kell*, No. C17-0640-JCC, 2018 WL
26 1382540, at *3 (W.D. Wash. Mar. 19, 2018) (citations omitted). The court agrees and grants
27 Defendants' motion to dismiss with prejudice.
28

## IV. CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss the SAC with prejudice is granted. The Clerk shall enter judgment in Defendants' favor and close the case.

**IT IS SO ORDERED.**

Dated: July 17, 2023



Donna M. Ryu
Chief Magistrate Judge
Judge Donna M. Ryu